# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Cascades Development of Minnesota, LLC
d/b/a Anytime Fitness, Inc., Associated Insurance
Agents, Inc., Nicholas Newton, and Westport
Insurance Corporation,

                            Plaintiffs,

                                                                     Civ. No. 09-2812 (RHK/SER)
                                                                      **MEMORANDUM OPINION**
                                                                      **AND ORDER**

v.

National Specialty Insurance, Jade Janina
Benson, and West Bend Insurance Company,

                            Defendants.

---

Rolf E. Sonnesyn, Tomsche Sonneyson & Tomsche, Minneapolis, Minnesota, for Plaintiffs.

Peter G. Van Bergen, Cousineau McGuire Chartered, Minneapolis, Minnesota, for Defendants.

---

## INTRODUCTION

This action arises out of a dispute over insurance coverage. Plaintiff Cascades Development of Minnesota, LLC ("Cascades") obtained a workers' compensation insurance policy ("the Policy") from Defendant West Bend Insurance Company ("West Bend") to cover employees of its new Anytime Fitness health club. Cascades obtained the Policy through Nicholas Newton ("Nicholas")[1], an insurance agent with Associated

---

[1] Because Nicholas Newton's brother, Wayne Newton, is also involved in this case and the two share the surname "Newton," the Court will refer to both by their first names throughout.

Insurance Agents, Inc. ("Associated"), who was authorized to sell West Bend's products. Shortly before the workers' compensation coverage became effective, Jade Benson, a Cascades employee, was seriously injured in a work-related car accident. West Bend denied coverage and Associated's errors-and-omissions ("E&O") insurer, Plaintiff Westport Insurance Corporation ("Westport"), assumed responsibility for her workers' compensation claim. Westport, Cascades, Associated, and Nicholas, as co-Plaintiffs, then commenced this action in Dakota County state court. They seek reformation of the Policy and indemnity from West Bend for workers' compensation benefits paid (and payable) on Benson's behalf. West Bend removed the action to this Court, asserting diversity jurisdiction, and has now moved for summary judgment.

After hearing argument on the summary-judgment Motion, the Court *sua sponte* raised a concern about whether diversity jurisdiction existed over this action and ordered Defendants (as the parties invoking the Court's jurisdiction) to demonstrate why subject-matter jurisdiction was present. (See Doc. No. 41.) Defendants complied, satisfying the Court's initial jurisdictional concern.[2] However, they raised another jurisdictional problem—Plaintiff Nicholas was a citizen of the same state (Wisconsin) as Defendant West Bend at the time the action was filed. Defendants argue that this does not destroy diversity, however, because Nicholas is merely a nominal party and can be disregarded for purposes of determining whether jurisdiction exists; Plaintiffs (not surprisingly) disagree. Having now heard from both sides, the jurisdictional issue and the Motion are

---

[2] The Court questioned the existence of diversity jurisdiction because Cascades is a limited liability company, and hence its citizenship is determined by that of its members, which were not identified in either the Complaint or Notice of Removal.

2

ripe for disposition. For the reasons set forth below, the Court concludes that it has jurisdiction over the action and will grant West Bend's Motion for Summary Judgment.

## BACKGROUND

The relevant facts are not in dispute. West Bend has a National Specialty Insurance ("NSI") division that writes insurance coverage for certain high-risk business classes, including fitness clubs.[3] Insurance policies for fitness clubs are written through NSI, but they are West Bend policies.

Nicholas is an insurance agent and the Executive Vice President of Associated. In April 2006, Associated entered into an agreement with West Bend authorizing it to sell West Bend's insurance products, including high-risk coverages available through NSI. The terms of the agreement provide:

> Subject to the requirements imposed by law, the terms of this Agreement and the underwriting rules and regulations of [West Bend] as stated in the Agent's Manual, the Agent is authorized to solicit, receive, buy and execute insurance contracts in the following lines of insurance . . . .

All Lines Offered by [West Bend] Only.

(Reisbord Aff. Ex. A at 1.) It also provides that West Bend "will not defend [Associated] against liabilities claimed to be caused by acts or omissions of [Associated], or employees or staff members of [Associated]," and instead requires Associated to maintain its own E&O insurance coverage. (Id. at 2.) There is no dispute that Westport provided E&O coverage to Associated and Nicholas at all relevant times.

---

[3] NSI is named as a party in this lawsuit; however, as it is merely a division of West Bend, the claims against it will be treated as claims against West Bend. (See Mem. in Supp. n.1.)

As the agreement alludes to, West Bend also has an Agent's Manual applicable to all agents authorized to write business for NSI. The Agent's Manual was available on West Bend's website, and Associated (and Nicholas) had access to it. The first section of the Manual, titled "General Information," gives agents the following directions regarding their ability to bind coverage:

> A. *General Information Agency Guide*
>
> * * *
>
> **2.** *Binding*
>
> > a. Agents may rate and bind Hole-In-One coverage, special events, some child care and personal appearance. See West Bend Connect for the latest authority limits.
> >
> > b. For all other types of coverage:
> >
> > **Agents DO NOT have rates or rating authority. Agents DO NOT have binding authority unless they have received a quote and approval from NSI.**

(Id. Ex. B at 1 (emphasis in original).)

Nicholas's brother, Wayne Newton ("Wayne"), was one of the principals of Cascades. Cascades planned to establish an Anytime Fitness franchise in Inver Grove Heights, Minnesota, which was projected to open in late September 2006. In late August, Wayne contacted Nicholas to set up a meeting regarding the club's insurance, and the two met on August 30, 2006. Wayne had already hired one employee—Jade Benson—to manage the new Anytime Fitness, and she was to begin work on September 1. According to Wayne, Nicholas knew Benson would be starting work on September 1 and that was why the two met about Cascades's insurance when they did.

At their meeting, Nicholas helped his brother complete an application for insurance known as an ACORD application. They also partially completed an NSI Health Club Questionnaire and, because Cascades would be employing Benson, Nicholas filled out an application for workers' compensation coverage with Wayne.

The brothers' recollections of when they agreed the policies needed to be effective have been inconsistent. In an October 11, 2006, e-mail outlining his meeting with Wayne, Nicholas stated "I concluded by asking [Wayne] when he would like coverage to be put into place. He said the club was to open officially on 9/28/06, and wanted the insurance in place by 9/21/06." (Reisbord Aff. Ex. M.) Nicholas also testified in his deposition that he asked Wayne at the end of their meeting when the policies needed to be effective, and they agreed on an effective date of September 21. (Nicholas Dep. 79.) Elsewhere in the deposition, however, Nicholas recalled the following exchange during the meeting: "[Wayne] said, we've hired somebody, she starts on the 1st, I need work comp, and I said no problem." (Id. at 69.) In fact, Nicholas also testified that:

> I told [Wayne] he had work comp coverage on the 1st. Not in those exact words. My exact words were, don't worry. When he asked about, is there time to get this in place because we're hiring her tomorrow, will we have work comp, and I said, yes, you will.

(Id. at 80–81.) Nicholas explained this inconsistency by testifying that on the morning of March 19, 2007, while replaying the August 30th meeting in his head on his drive to work, he suddenly realized that "[Wayne] told me the 1st. I didn't properly document it and I've got to man up to this." (Id. at 207–08.) For his part, Wayne "[does]n't specifically remember [Nicholas] saying 'I will have workers' compensation coverage on

5

[Benson] September 1st,'" but he "left that meeting with the understanding that he would have the coverage in effect by the time she was employed, which was the 1st of September." (Wayne Dep. 145.)

In any event, Nicholas left the meeting with partially completed applications, which he later completed in Associated's computer system after receiving the final information required for the NSI Health Club Questionnaire on September 6. Both the applications and Questionnaire had to be sent to an NSI underwriter before Nicholas could obtain a rate quote for the policies. The applications were sent to an NSI underwriter on September 7, at which time Associated requested a quote but did not yet request that coverage be bound. All of the policies (including the workers' compensation policy) listed a proposed effective date of September 21, 2006. On September 11, NSI contacted Associated asking for the Health Club Questionnaire, which had not been sent with the applications, and Nicholas e-mailed the questionnaire that same day. NSI faxed an insurance quote to Nicholas on September 19, which was approved by Wayne the following day. On September 21, Nicholas's associate e-mailed NSI and requested that the policies be issued at the quoted rate with an effective date of September 20, 2006.

Meanwhile, and unbeknownst to anyone at West Bend, Benson was involved in a car accident on September 18, 2006. She sustained a serious brain injury that left her totally disabled and unable to work in any capacity. The parties have stipulated that the accident was work-related. Nicholas and Associated notified Westport of a potential E&O claim arising from Benson's accident on October 16, 2006. Ultimately, Westport agreed to resolve Cascades's claim against Associated and to assume any potential

obligations to defend and indemnify Cascades against Benson's claims, essentially standing in the place of the workers' compensation insurer. Westport also assumed any indemnification rights against West Bend.

Westport then commenced this action against West Bend. The crux of the instant action is Westport's position that the Policy was effective at the time of the accident because Nicholas orally bound West Bend to coverage beginning on September 1—before the date when the Policy actually became effective. It seeks: (1) a declaration that West Bend insured Cascades against workers' compensation liability as of September 1, 2006, and thus is obligated to indemnify Wesport for any workers' compensation benefits arising out of Benson's accident; (2) reformation of the workers' compensation policy to have an effective date of September 1, 2006; and (3) breach-of-contract damages arising out of West Bend's denial of coverage. Although other plaintiffs and defendants are named in the case, the dispute is primarily between West Bend and Westport.

West Bend now moves for summary judgment. Before it can address the merits of its Motion, however, the Court must determine whether it has jurisdiction over the action.

## SUBJECT-MATTER JURISDICTION

When Defendants removed this action to this Court, they invoked jurisdiction based on diversity pursuant to 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity—"the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." E.g., Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005). However, "complete diversity is tested by the citizenship of the real parties to the

controversy." Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc., 149 F.3d 794, 796 (8th Cir. 1998) (citations omitted). In other words, "if the 'nondiverse' plaintiff is not a real party in interest, and is purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction." Iowa Pub. Serv. Co. v. Med. Bow Coal Co., 556 F.2d 400, 404 (1977) (citing Salem Trust Co. v. Mfrs.' Fin. Co., 264 U.S. 182 (1924)). Here, both sides agree that the Court's jurisdiction turns on whether Nicholas is a nominal party (in which case he can be ignored and diversity would exist) or a real party in interest (in which case complete diversity would be lacking).

A "real party in interest" is "the person who, under governing substantive law, is entitled to enforce the right asserted, and in a diversity case, the governing substantive law is ordinarily state law." Iowa Pub. Serv., 556 F.2d at 404. Thus, the Court must first determine what right or rights are being asserted here. The Complaint contains three counts, but it repeatedly asserts two rights—the right to indemnification from West Bend, and the right to reformation of the Policy.[4] The Court addresses each in turn.

First, under Minnesota law,[5] "[i]ndemnity is a right which inures to a person who has discharged a duty which is owed by him but which, as between himself and another, should have been discharged by the other, so that if the second does not *reimburse* the

---

[4] The Complaint also asserts a breach-of-contract claim and a right to contract damages. However, this right is not asserted on behalf of Nicholas. (See Compl. ¶ 27 ("Associated Insurance Agents, Inc. and Westport Insurance Corporation, as assignees of Cascades, have sustained damages.").) This is notably different from the other rights asserted. (See id. ¶¶ 25, 26 ("Plaintiffs seek reformation of the policy . . . ."; "Nicholas Newton, Associated Insurance Agents, Inc. and Westport Insurance Corporation . . . are entitled to indemnification . . . .").)

[5] Neither side contends that the law of any state other than Minnesota should apply. "Thus, because [Minnesota] is the forum state, its laws apply by default." BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003) (citations omitted).

first, the second is unjustly enriched to the extent that his liability has been discharged." Am. Mut. Liab. Ins. Co. v. Reed Cleaners, 122 N.W.2d 178, 182 (Minn. 1963) (emphasis added). By its very definition, to indemnify another is "[t]o reimburse . . . for a loss suffered," and indemnification is the act of "compensating for loss or damage sustained." Black's Law Dictionary (9th ed. 2009). Simply stated, one has no right to indemnification if he has not borne any loss because indemnification is reimbursement.

Shortly after this case was filed, Cascades assigned all indemnification rights and claims it had against West Bend arising out of Benson's workers' compensation claim to Associated, Nicholas, and Westport. (See Compl. Ex. C.) At first blush, this suggests that Nicholas indeed has a claim to indemnification from West Bend, since he was assignee of such a right. The facts belie this conclusion, however, because Nicholas has not incurred any losses arising from Benson's injury. When asked whether he was "out-of-pocket anything" in this matter, Nicholas responded: "I'm not aware of any out-of-pocket expense. And I'm certainly not aware that I'm making a claim for any out-of-pocket expense." (Nicholas Dep. at 214.) He later reiterated the point, saying "I'm not aware that I'm asking for any kind of monetary [relief] from anyone." (Id. at 216.) In fact, Nicholas has conceded that he "do[es]n't know why [he's] a party" to this action at all. (Id. at 215.) Westport stepped in to pay Benson's claim, and Westport is the party now seeking to shift this obligation back onto West Bend. Nicholas is not entitled to enforce the right to indemnity.

The second right asserted is the right to reformation. A written instrument may be reformed if three elements are proven: "(1) there was a valid agreement between the

9

parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties or a unilateral mistake accompanied by fraud or inequitable conduct by the other party." Nichols v. Shelard Nat'l Bank, 294 N.W.2d 730, 734 (Minn. 1980). The "parties" between whom this right exists, however, are the parties to the agreement at issue. See Manderfeld v. Krovitz, 539 N.W.2d 802, 805–06 (Minn. Ct. App. 1995) ("Reformation is generally allowed against the *original* parties to an instrument and those in privity with the immediate parties."); Am. Jur. 2d (Reformation of Instruments) § 57 (2010) ("[T]he reformation of written instruments may be had by the immediate parties thereto and by those standing in privity with them."). Here, the parties to the Policy were Cascades (the insured) and West Bend (the insurer). Nicholas was merely an agent; he was not a party to the agreement and thus has no right to seek its reformation.

Since Nicholas is not entitled to enforce either of the rights asserted in this action, he is not a "real party in interest." He is merely a nominal party and may be disregarded for purposes of determining diversity jurisdiction. See Iowa Pub. Serv., 556 F.2d at 404.

Cascades also argues that Nicholas is a real party in interest because it has asserted a counterclaim against him. However, because Nicholas is only a nominal party with respect to the original claims in the Complaint, it is as though he were not a plaintiff in the action at all (indeed, the Court could simply dismiss him).[6] This makes Cascades's claim against Nicholas like a third-party claim, and the Court can exercise supplemental

---

[6] "[I]f the 'nondiverse' plaintiff is . . . purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction. And such a party *may be dropped from the case*." Iowa Pub. Serv., 556 F.2d at 404 (citations omitted).

jurisdiction over a third-party claim,[7] even if it involves a non-diverse party. See REP MCR Realty, L.L.C. v. Lynch, 200 Fed. App'x 592, 593 (7th Cir. 2006) ("Diversity jurisdiction was secure over the main claim . . . Because it was [the defendant] who impleaded the [third party], the third-party claim (over which there was no independent diversity jurisdiction, as all were from Illinois) fell within the court's supplemental jurisdiction."); State Nat'l Ins. Co. v. Yates, 391 F.3d 577, 581 (5th Cir. 2004) ("The district court had supplemental jurisdiction over the defendant's counterclaims against the additional party [], notwithstanding the lack of diversity between those two parties.").

Ultimately, Cascades's claim against Nicholas does not alter his status as a nominal party for purposes of jurisdiction over the original claims.[8] Because the Court retains jurisdiction, it will proceed to the merits of West Bend's Motion for Summary Judgment. For the reasons set forth below, the Court will grant the Motion.

## SUMMARY-JUDGMENT ANALYSIS

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

---

[7] Supplemental jurisdiction exists where a claim is "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case and controversy." 28 U.S.C. § 1367(a). Where original jurisdiction is founded solely on diversity (as here), supplemental jurisdiction over "claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24" is limited by 28 U.S.C. § 1367(b). However, this limitation applies only to original plaintiffs— "not to a defendant that happens also to be a counter-plaintiff, cross-plaintiff, or third-party plaintiff," see State Nat'l Ins. Co. v. Yates, 391 F.3d 577, 581 n.16 (5th Cir. 2004)—and thus does not preclude supplemental jurisdiction over Cascades's claim against Nicholas.

[8] Furthermore, in the Court's view, the claim against Nicholas arises out of the same case or controversy as the Plaintiffs' claims, so supplemental jurisdiction exists under 28 U.S.C. § 1367.

11

477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Under Minnesota law, "oral agreements that insurance against . . . workmen's compensation shall take effect immediately or at a time prior to the actual issuance of the policy are binding upon the company *if made by an agent having authority*." Gulbrandson v. Empire Mut. Ins. Co., 87 N.W.2d 850, 852 (Minn. 1958) (emphasis added); accord Morrison v. Swenson, 142 N.W.2d 640, 645 (Minn. 1966). An agent's authority may be actual, implied, or apparent. Morrison, 142 N.W.2d at 645; N. Star Mut. Ins. Co. v. Zurich Ins. Co., 269 F. Supp. 2d 1140, 1150 (D. Minn. 2003) (Erickson, M.J., by consent of the parties). West Bend does not dispute that Nicholas was acting as its agent. (See Mem. in Supp. 18 n.4.) However, being an agent is not equivalent to having binding authority. The parties hotly dispute whether Nicholas had authority to bind West Bend to workers' compensation coverage prior to Benson's accident.

Westport concedes that there is no evidence of implied authority here. (See Mem. in Opp'n 1.) Thus, the issue is whether Nicholas had either actual or apparent authority to bind West Bend to workers' compensation coverage on September 1, 2006. If not, there can be no coverage, and West Bend's Motion must be granted.

I. **Actual Authority**

Actual authority refers to the scope of authority actually given to an agent by a principal, as evidenced by their agreement. E.g., N. Star, 269 F. Supp. 2d at 1151 (noting the absence of actual authority based on the agreement between the insurer and broker); Becker Ins. Agency, Inc. v. N. Cent. Crop Ins., Inc., No. 95-2018, 1996 WL 70980, at *1 (Minn. Ct. App. Feb. 20, 1996) ("[T]he agency agreement . . . controls the agency's express authority.")

The agency agreement Associated (and Nicholas) entered into with West Bend provided that the agents' authority was "[s]ubject to the requirements imposed by law, the terms of this Agreement and the *underwriting rules and regulations of the Company as stated in the Agent's Manual*." (Reisbord Aff. Ex. A at 1 (emphasis added).) The Agent's Manual referenced in the agreement expressly states—on the first page, in bold text, and with capitalization for emphasis—"**Agents DO NOT have binding authority unless they have received a quote and approval from NSI**." (Id. Ex. B at 1 (emphasis in original).) Despite this emphatic language, Westport argues that the "Agent's Manual is a not [sic] paragon of clarity." (Mem. in Opp'n 23.) The Court finds it difficult to imagine a clearer indication of the circumstances in which an agent has (or does not have) binding authority than that presented here.

13

The provision in West Bend's Manual resembles one in the agency agreement in North Star, which stated: "**[Agent] has no authority to bind coverage on behalf of [Insurer] . . . unless otherwise agreed to in writing by [Insurer].**" 269 F. Supp. 2d at 1151 (emphasis in original). Notably, the plaintiff in North Star made no attempt to argue that the agent had actual authority in light of this provision, and the Court found that any such argument would have been "without merit." Id. Similarly, this Court concludes Westport's argument is without merit here.

The facts show that Nicholas did not even request a quote from NSI until September 7, and NSI did not provide a quote until September 19. Pursuant to the agency agreement and Agent's Manual, he had no binding authority until receiving a quote from NSI. Thus, when Nicholas met with Wayne on August 30, he had no actual authority to bind West Bend to coverage. Moreover, after reviewing the Agent's Manual, Nicholas himself acknowledged that he did not have actual authority to bind West Bend to coverage prior to September 19. (See Nicholas Dep. 106.)

## II.     Apparent Authority

Apparent authority is the authority a principal "holds an agent out as possessing, or knowingly permits an agent to assume." Four D, Inc. v. Dutchland Plastics Corp., No. 01-2073, 2003 WL 1842838, at *4 (D. Minn. Apr. 8, 2003) (Kyle, J.) (quoting Foley v. Allard, 427 N.W.2d 647, 652 (Minn. 1988)). Minnesota courts apply the following test to analyze apparent authority:

> [1] [t]he principal must have held the agent out as having authority or must have knowingly permitted the agent to act on its behalf; [2] the party dealing with the agent must have actual knowledge that the agent was held

out by the principal as having such authority or had been permitted by the principal to act on its behalf and; [3] the proof of the agent's apparent authority must be found in the conduct of the principal, not the agent.

Hockemeyer v. Pooler, 130 N.W.2d 367, 375 (Minn. 1964); accord N. Star, 269 F. Supp. 2d at 1151. "No agent by his own act can create evidence of [apparent] authority." W. Concord Conservation Club Inc. v. Chilson, 306 N.W.2d 893, 897 (Minn. 1981).

In order to find that Nicholas had apparent authority to bind West Bend, the facts must show that West Bend said or did something to hold him out as having that authority. See N. Star, 269 F. Supp. 2d at 1152 ("[The insurer] must show some action which was taken by [it] to hold [its agent] out *not just as an agent, but as an agent with binding authority*.") (emphasis added). Even if Netwon had expressly claimed to bind West Bend to coverage, none of his representations to Wayne could establish apparent authority. Likewise, Wayne's subjective understanding that Nicholas would have the fitness club's workers' compensation coverage in effect by September 1 does not govern whether Nicholas had apparent authority to bind. Apparent authority can only be based on a communication or act <u>by West Bend</u> holding Nicholas out as authorized to bind coverage.

Westport argues that there is a fact issue about Nicholas's apparent authority because West Bend held Nicholas out as authorized to bind via the Health Club Questionnaire that Nicholas completed with Wayne at their August 30th meeting. In Westport's view, "[t]he questionnaire disclosed [Nicholas's] agency." (Mem. in Opp'n 20.) However, being an agent does not mean Nicholas had binding authority. The Questionnaire was created by West Bend, but nothing in it holds Nicholas out as having authority to bind coverage. A disclaimer on the Questionnaire just above the line bearing

15

Wayne's signature states, "I understand completion of this questionnaire does not compel the company to provide coverage." (Reisbord Aff. Ex. D.) Additionally, even without the disclaimer, the Questionnaire is insufficient to establish apparent authority. It simply gathers basic information about the would-be insured's facilities, employees, and services. It includes no effective date or proposed effective date that might suggest the insurance coverage would indeed begin on a certain date, and it is entirely silent about the relationship between West Bend and its agents or the authority an agent possesses. In short, there is no genuine issue about Nicholas's apparent authority.

### III. Minnesota Licensing Statutes

Despite years of well-settled Minnesota precedent, Westport also argues that classifying types of authority into the three categories discussed above is "Aristotelian" and that "[t]he authority to bind, however it is classified, arises out of what the agent needs to do to accomplish the agency." (Mem. in Opp'n at 16–17.) Westport relies on three Minnesota statutes—(1) Minn. Stat. § 60K.49, subd. 1; (2) Minn. Stat. § 65A.14; and (3) Minn. Stat. § 72A.03—that deal with agency relationships in the insurance industry. Each of these statutes provides that a person who solicits insurance or procures insurance contracts on behalf of an insurer is an agent of the insurer (not the insured).[9]

---

[9] Specifically, the statutes Westport relies upon provide as follows:
    **Minn. Stat. § 60K.49, subd. 1**: "A person performing acts requiring a producer license under this chapter is at all times the agent of the insurer and not the insured."
    **Minn. Stat. § 65A.14**: "Every person who solicits insurance and procures an application therefor shall be held to be an agent of the party afterward issuing insurance thereon or a renewal thereof."
    **Minn. Stat. § 72A.03**: "Every insurance agent who acts for another in negotiating a contract of insurance by an insurance company shall be held to be

16

Westport relies on these statutes to argue for "a form of statutory apparent authority," positing that "[t]he statutory process whereby an insurer appoints an insurance agent to represent it in Minnesota creates the authority to bind." (Mem. in Opp'n 6.)

The Court can find no support for apparent authority to bind (or any other form of authority) in the statutes Westport relies upon. In fact, as Wesport itself acknowledges, there is another statute in the same chapter as one of the statutes it cites (Chapter 60K)[10] that directly addresses the scope of an agent's authority. It provides: "[t]he license [to sell a class or classes of insurance] *does not create any authority, actual, apparent, or inherent*, in the holder to represent or commit an insurance carrier." Minn. Stat. § 60K.32 (emphasis added). Not only does § 60K.32 recognize the three widely accepted categories of authority, but it crystalizes a point Westport seems to confuse—being an agent (even a licensed agent) does not automatically mean one has authority to bind.

Westport asks this Court to conclude that when an insurer appoints an agent, that agent is statutorily imbued with binding authority. Yet the statutes and cases it relies upon do not lead to that result. Rather, an agent can only bind an insurer if he had actual, apparent, or implied authority to do so. Nicholas did not. Therefore, he could not have bound West Bend to coverage prior to Benson's accident.

---

        the company's agent for the purpose of collecting or securing the premiums therefor, whatever conditions or stipulations may be contained in the contract or policy. Any such agent who by fraudulent representations procures payment, or an obligation for the payment, of an insurance premium shall be guilty, for the first offense, of a misdemeanor, and for each subsequent offense, of a gross misdemeanor."

[10] "Sections 60K.30 to 60K.50 govern the qualifications and procedures for the licensing of insurance producers." Minn. Stat. § 60K.30(a).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1) The Order to Show Cause (Doc. No. 41) is **DISCHARGED**;

2) West Bend's Motion for Summary Judgment (Doc. No. 26) is **GRANTED**;

3) Plaintiffs' Complaint (attached to Doc. No. 1) is **DISMISSED WITH PREJUDICE**; and

4) West Bend's Counterclaims against Nicholas Newton and Associated (Doc. No. 2) are **MOOT** and are also **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: January 25, 2011                                s/Richard H. Kyle
                                                       RICHARD H. KYLE
                                                       United States District Judge